621 S.E.2d 15 (2005)
In the Matter of D.D.Y.
No. COA04-990.
Court of Appeals of North Carolina.
July 5, 2005.
Jeffery L. Jenkins, Halifax, for petitioner-appellee, Halifax County Department of Social Services.
The Turrentine Group, P.L.L.C., by Karlene Scott-Turrentine, Raleigh, for respondent-appellant.
Deborah Greenblatt, Raleigh, for Amicus Curiae, ACLU of North Carolina and Carolina Legal Assistance.
Shelagh R. Kenney, Raleigh, for Amicus Curiae, ACLU-NCLF Legal Foundation, Inc.
*16 TYSON, Judge.
Respondent appeals from orders entered 17 July 2003, 22 August 2003, and 15 October 2003. The trial court found respondent's minor child ("D.D.Y.") to be abused, neglected, and dependent. D.D.Y. was placed in the custody of the Halifax County Department of Social Services ("DSS"), who placed him with his maternal grandmother. Respondent was not allowed any contact or visitation with her son. We reverse and remand.

I. Background
D.D.Y. was born on 20 October 1989. D.D.Y.'s biological father is unknown. Respondent and D.D.Y. have lived with friends and respondent's biological family for several years. In late 1996, respondent moved to North Carolina. DSS received a report on 7 July 2003 alleging sexual abuse of D.D.Y. by respondent and filed an amended petition alleging D.D.Y. was an abused, neglected, and dependent child on 6 August 2003. DSS's petition was based on allegations that respondent: (1) sexually fondled D.D.Y.; (2) was sleeping in the same bed with D.D.Y.; (3) had washed D.D.Y.'s fruit with Clorox and put Clorox in his drinking water; (4) fought with D.D.Y., leaving bruises on him; and (5) made D.D.Y. wear gloves at times so he could not touch anything with his bare hands.
On 8 July 2003, Esterine Pitt, a social worker with DSS, met with respondent and prepared a safety assessment. DSS sent a letter to respondent on 9 July 2003 requesting her cooperation with an examination and interview of D.D.Y. at the Tedi Bear Child Advocacy Center in Greenville, North Carolina. On 11 July 2003, DSS filed a petition alleging respondent obstructed or interfered with its investigation by refusing to allow D.D.Y. to go to the Tedi Bear Center without respondent being present. Respondent was ordered to cease obstruction and interference of DSS's investigation on 17 July 2003. An ex parte order dated 25 July 2003 placed D.D.Y. into the nonsecure custody of DSS. Throughout the process, respondent repeatedly refused or waived appointed counsel. During the hearings, respondent participated in the proceedings by cross-examining witnesses, testifying on her own behalf, introducing documents as exhibits, and objecting to numerous questions.
The trial court entered an order continuing nonsecure custody and placed D.D.Y. in the home of his maternal grandmother in Maryland. Respondent was initially allowed supervised visitation with D.D.Y.
A psychological evaluation of D.D.Y. was conducted on 4 August 2003. The evaluation did not produce any evidence of sexual abuse, but produced other evidence that respondent: (1) punched D.D.Y. in the eyes; (2) would chase D.D.Y. with a knife thinking D.D.Y. was a man named "Darryl" who was controlled by the "devil;" (3) told D.D.Y. "Darryl's" family "was going to die and she was going to buy a gun and kill his family" and "that she would kill [D.D.Y.] to get to `Darryl;'" and (4) undressed in front of D.D.Y. and walked around the house naked while she cooked and cleaned.
*17 The trial court reviewed the placement order on 15 August 2003 and found the nonsecure order should continue. However, the court ordered no visitation or communication to occur between respondent and D.D.Y. The trial court held an adjudication hearing on 3 October 2003 and entered an order on 15 October 2003 finding that D.D.Y. was abused, neglected, and dependent. Custody and guardianship of D.D.Y. was given to his maternal grandmother and any visitation and communication rights to respondent were denied. Respondent appeals. Within the notices of appeal, respondent again specifically waived her right to counsel.

II. Issues
Respondent argues the trial court committed "plain" and reversible error by: (1) failing to appoint a guardian ad litem for respondent sua sponte; (2) finding as fact respondent "obstructed or interfered" with DSS's investigation; (3) abusing its discretion in ordering respondent to transport D.D.Y. to the Tedi Bear Center and erred by holding her in contempt when she was unable to provide transportation; (4) finding D.D.Y. in substantial risk of physical injury; and (5) ordering supervised visitation and later prohibiting visitation and eliminating reunification efforts.

III. Guardian ad Litem Appointment
Respondent argues the trial court was under a duty to appoint a guardian ad litem ("GAL") sua sponte in light of her alleged mental illness. DSS argues the case at bar does not terminate parental rights under N.C. Gen.Stat. § 7B-1111 and respondent should not be appointed a GAL. We agree with respondent.
N.C. Gen.Stat. § 7B-602(b)(1) (2003) provides when a petition is filed by DSS alleging abuse, neglect and/or dependancy:
(b) . . . a guardian ad litem shall be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent in the following cases:
(1) Where it is alleged that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101 in that the parent is incapable as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile. . . .
Citing In re Estes, respondent argues this Court has held she is entitled to a guardian ad litem and the trial court's failure to appoint one is reversible error. 157 N.C.App. 513, 518, 579 S.E.2d 496, 499, disc. rev. denied. 357 N.C. 459, 585 S.E.2d 390 (2003). In In re Estes, we stated:
[t]he dispositive issue on appeal is whether the trial court could properly terminate respondent's parental rights without appointing a guardian ad litem to represent respondent at the termination hearing where the petition or motion to terminate parental rights alleged, and the evidence supporting such allegations tended to show, that respondent was incapable of providing proper care and supervision to the child due to mental illness. Because we conclude that section 7B-1101 requires the trial court to appoint a guardian ad litem in such instances, we reverse the order of the trial court.
157 N.C.App. at 515, 579 S.E.2d at 498. Under the facts before us, DSS has not filed a petition to terminate respondent's parental rights.
In In re L.M.C., DSS alleged the respondent mother's child to be dependent and removed L.M.C. from the custody of the respondent mother. ___ N.C.App. ___, ___, 613 S.E.2d 256, 258 (2005). We stated:
As explained in In re H. W., 163 N.C.App. 438, 447, 594 S.E.2d 211, 216 (2004), N.C. Gen.Stat. § 7B-602 requires the appointment of a guardian ad litem only in cases where (1) it is alleged that a juvenile is dependent; and (2) the juvenile's dependency is alleged to be caused by a parent or guardian being `incapable as the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition of providing for the proper care and supervision of the juvenile.'
Id. at ___, 613 S.E.2d at 258 (citation omitted). We held because DSS alleged the respondent *18 mother's child to be dependent and the trial court's documents and findings indicated the respondent mother had mental health issues, the trial court erred in failing to appoint a GAL for her. Id. at ___, 613 S.E.2d at 258. We vacated and remanded the case, stating "[t]he `failure to appoint a guardian ad litem in any appropriate case is deemed prejudicial error per se . . . .'" Id. at ___, 613 S.E.2d at 258 (quotation omitted).
Under N.C. Gen.Stat. § 7B-602, a GAL shall be appointed if the juvenile is alleged to be "dependent" and "the parent is incapable as a result of . . . mental illness . . . of providing the proper care and supervision of the juvenile." Here, DSS's original petition did not allege dependency. However, the amended petition alleges D.D.Y. is a "dependent juvenile," in that his "parent . . . is unable to provide for [his] care or supervision and lacks an appropriate alternative child care arrangement." The amended petition alleges respondent's behavior is in part the result of mental illness and states, "[a]s a result of her untreated mental illness, the [respondent] is not able to provide proper care, supervision, discipline, housing and physical necessities for the juvenile. . . ."
At the time of the hearings, the trial court was on notice of respondent's alleged mental conditions. The trial court made references to and questioned respondent's mental condition in several of its orders. The amended petition on 6 August 2003 stated, "behavior of the mother of the juvenile . . . is, in part, the result of mental illness." On 15 October 2003, "[t]he court specifically [found] that [respondent] suffers from some emotional or mental disorder which significantly impairs her ability to parent her child appropriately." The court's findings indicate respondent was incapable as a result of her mental illness of "providing for the proper care and supervision [of D.D.Y.]." N.C. Gen.Stat. § 7B-602.
Here, as in In re L.M.C., DSS's petition alleges: (1) D.D.Y. is a dependent juvenile; and (2) respondent cannot provide the necessary care and supervision D.D.Y. needs as a result of respondent's mental condition. Under the facts before us, a GAL should have been appointed. The trial court's failure to do so is "`prejudicial error per se.'" In re L.M.C., ___ N.C.App. at ___, 613 S.E.2d at 258 (quotation omitted).
Although this case is not a termination of respondent's parental rights, the trial court's ruling reaches the same effect. Exclusive custody of D.D.Y. was placed with his maternal grandmother and not with respondent. Respondent is not allowed any visitation or communication with D.D.Y. The trial court found in the custody order "that [respondent] suffers from some emotional or mental disorder" and used this finding to adjudicate D.D.Y. as an abused, neglected, and dependent juvenile. Based on the trial court's findings of fact and conclusions of law, D.D.Y. was placed into the legal custody of his maternal grandmother. We note that during the proceedings where respondent waived her right to counsel, the trial court took notice of respondent's mental illness yet failed to appoint a GAL.
Under N.C. Gen.Stat. § 7B-602, the trial court "shall" appoint a GAL where it is "alleged" the juvenile is dependent in that the parent has a mental illness and is incapable "of providing for the proper care and supervision of the juvenile." The statute is not limited to an appointment of a GAL only in termination of parental rights cases. The trial court erred in not appointing a GAL sua sponte for respondent.

V. Conclusion
The trial court is under a statutory duty to appoint a GAL when a petition "alleges" a child is dependent and the parent can not offer proper care for their child based on mental illness or other conditions listed in N.C. Gen.Stat. § 7B-602(b)(1). In light of our decision on this issue, we do not address respondent's remaining assignments of error. The trial court's orders are reversed and we remand for appointment of a GAL for respondent and a new hearing.
Reversed and remanded.
Judges WYNN and ELMORE concur.