628 S.E.2d 387 (2006)
In re J.S.L., A Minor Child.
In re G.T.L., A Minor Child.
In re T.L.L., A Minor Child.
No. COA05-768.
Court of Appeals of North Carolina.
April 18, 2006.
No brief filed for petitioner-appellee Rutherford County Department of Social Services.
Hunton & Williams LLP, by Ray A. Starling, Raleigh, for petitioner-appellee Guardian ad Litem.
Carol Ann Bauer, Morganton, for respondent mother-appellant.
Mercedes O. Chut, Greensboro, for respondent father-appellant.
*388 TYSON, Judge.
R.K.L. ("respondent mother") and R.L.L. ("respondent father") appeal from judgments entered terminating their parental rights to their children, J.S.L, G.T.L., and T.L.L. We affirm in part, reverse in part, and remand.

I. Motion to Dismiss and Motion to Amend the Record
Subsequent to the filing of respondent father's notice of appeal, the appellee guardian ad litem for the minor children filed a motion to dismiss respondent father's appeal pursuant to Rule 37 of the North Carolina Rules of Appellate Procedure.
The trial court's judgments were entered 30 December 2004 and served on the parties. The ten-day period for filing a notice of appeal expired on 13 January 2005. The attorney for appellee Rutherford County Department of Social Services ("DSS") served respondent father by placing a copy of the judgments in his attorney's mailbox maintained by the clerk of court at the courthouse. The attorney representing respondent father died on 7 February 2005. Respondent father filed his notice of appeal pro se on 9 February 2005.
Subsequent to the filing of the motion to dismiss, respondent father filed a petition for writ of certiorari. Respondent father's petition is granted. N.C. Gen.Stat. § 7A-31 (2005); N.C.R.App. P. 21 (2006). Appellee guardian ad litem's motion to dismiss is denied.
Respondent father moved to amend his notice of appeal to include the following additional assignment of error: "[t]he trial court committed reversible error in delaying entry of each order of adjudication in this case beyond the statutory requirement of thirty days." We allow respondent father's motion to amend to add this additional assignment of error.

II. Background
Respondents have three children, J.S.L., age thirteen, G.T.L., age nine, and T.L.L., age eight.
On 1 November 2002, both respondents admitted to allegations of neglect concerning all three children and stipulated the children's best interests would be served for DSS to have custody of the children and for DSS to make a lawful placement of the children.
DSS developed a case plan to address the issue of neglect of the children. Respondent father signed the case plan. Respondent mother declined to sign the plan.
The case plan established several objectives, including: (1) respondent mother should overcome substance abuse and addiction; (2) respondents should establish a home free of domestic violence; (3) respondents should provide the children a sanitary environment in which to live; (4) respondents should provide financial child support for the children; and (5) respondent mother should gain stable mental health and good parenting abilities.
To work toward the first objective, DSS encouraged respondent mother to voluntarily go to an inpatient treatment program for her substance abuse problems. The trial court found respondent mother has "experienced substantial problems with abuse of prescription drugs and illegal controlled substances since 1996. She refuses to attend recommended mental health therapy sessions, instead going to any length to obtain prescribed pain medication from numerous sources." Respondent mother never voluntarily attended an inpatient program. Respondent mother was incarcerated from April 2003 until July 2003 for an attempted *389 forgery conviction and was required to undergo mandatory treatment during that time. DSS also requested respondent mother consult only one doctor for legitimate illnesses and one pharmacy for obtaining prescription medications. Respondent mother has not complied with that request.
To work toward the second objective, DSS requested that respondent father attend anger management classes. Respondent father attended and completed the classes. After attending the anger management classes, respondent father pled guilty to assault on a female after he "spit" on respondent mother.
DSS established the third objective because respondents were without a home. Respondents had failed to pay rent and utility bills and were forced to vacate their home. Following DSS's recommendation, respondents moved into a mobile home rent free and received assistance to pay utilities. Respondent father is gainfully employed. Respondent mother is in the process of filing for disability.
DSS established the fifth objective as a result of respondent mother's substance abuse and addiction. DSS encouraged respondent mother to obtain a mental health evaluation and follow all recommendations. Respondent mother never presented for a mental health examination, even though she called mental health services several times and threatened to commit suicide.

III. Issues
Respondent mother argues the trial court: (1) lacked jurisdiction to hear the motion in the cause to terminate her parental rights because she was not properly served with notice; (2) erred in receiving her mental health records into evidence; and (3) erred in not appointing a guardian ad litem to aid her.
Respondent father argues the trial court erred by: (1) making findings of fact that are not supported by clear, cogent, and convincing evidence; (2) concluding as a matter of law that grounds existed to terminate his parental rights to each child and failing to make proper conclusions of law; (3) terminating his rights to each child where the motions in the cause violated N.C. Gen.Stat. § 7B-1104(6); (4) terminating his rights to each child when he was not properly served with notice under N.C. Gen.Stat. §§ 7B-1106.1.26 and 7B-1106.1.27; and (5) delaying entry of the adjudicatory orders in this case beyond the statutory requirement of thirty days after hearing as required by N.C. Gen. Stat. § 7B-1110(a).

IV. Standard of Review
"On appeal, our standard of review for the termination of parental rights is whether the trial court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law." In re Baker, 158 N.C.App. 491, 493, 581 S.E.2d 144, 146 (2003) (citations and internal quotations omitted).
The trial court's "conclusions of law are reviewable de novo on appeal." Starco, Inc. v. AMG Bonding and Ins. Servs., 124 N.C.App. 332, 336, 477 S.E.2d 211, 215 (1996).

V. Respondent Mother

A. Jurisdiction
Respondent mother argues the trial court lacked jurisdiction to hear DSS's motion in the cause to terminate her parental rights. She asserts DSS failed to properly serve her with notice of the termination proceedings.
N.C. Gen.Stat. § 7B-1106.19(a)(1) (2005) provides, "(a) Upon the filing of a motion pursuant to G.S. 7B-1102, the movant shall prepare a notice directed to each of the following persons or agency, not otherwise a movant: (1) The parents of the juvenile."
Respondent mother was present with counsel and participated in the termination hearing and entered no objection regarding improper notice at the proceeding. This Court stated in In re B.M., "[w]here a movant fails to give the required notice, prejudicial error exists, and a new hearing is required. However, a party who is entitled to notice of a hearing waives that notice by attending the hearing of the motion and participating in it without objecting to the lack thereof." 168 N.C.App. 350, 355, 607 S.E.2d *390 698, 702 (2005) (internal quotations and citations omitted).
In In re J.S., the respondents contended they did not receive proper notice of the permanency planning hearing in accordance with N.C. Gen.Stat. § 7B-907(a). 165 N.C.App. 509, 514, 598 S.E.2d 658, 662 (2004). The respondents and their attorneys were present and participated in the hearing and failed to object to the insufficiency of notice. Id. We held the respondents "waived any objection they might have had to improper notice." Id. Here, respondent mother appeared with counsel at the hearing and failed to object to any lack of notice. This assignment of error is overruled.

B. Medical Records
Respondent mother argues the trial court erred by receiving her mental health medical records into evidence. We disagree.
At trial, respondent mother made a general objection to the admission of her mental health records on privacy grounds. Respondent mother argues that "any records relating to [her] mental or substance abuse issues are not admissible as hospital records." Respondent mother contends the mental health records were inadmissible based upon the requirements of N.C. Gen.Stat. § 122C-52(b).
The trial court made the following finding of fact:
(6) Upon conclusion of all the evidence as to adjudication the Court recessed for the purpose of reviewing the substantial medical records of the mother offered into evidence by the Guardian ad Litem. Following review of the medical records of [respondent mother] and the other evidence presented the Court is convinced that [she] has experienced substantial problems with abuse of prescription drugs and illegal controlled substances since 1996.
N.C. Gen.Stat. § 8-44.1 (2005) provides:
Copies or originals of hospital medical records shall not be held inadmissible in any court action or proceeding on the grounds that they lack certification, identification, or authentication, and shall be received as evidence if otherwise admissible, in any court or quasi-judicial proceeding, if they have been tendered to the presiding judge or designee by the custodian of the records, in accordance with G.S. 1A-1, Rule 45(c), or if they are certified, identified, and authenticated by the live testimony of the custodian of such records.
Hospital medical records are defined for purposes of this section and G.S. 1A-1, Rule 45(c) as records made in connection with the diagnosis, care and treatment of any patient or the charges for such services except that records covered by G.S. 122-8.1, G.S. 90-109.1 and federal statutory or regulatory provisions regarding alcohol and drug abuse, are subject to the requirements of said statutes.
N.C. Gen.Stat. § 122C-52(b) (2005) provides, "[e]xcept as authorized by G.S. 122C-53 through G.S. 122C-56, no individual having access to confidential information may disclose this information." N.C. Gen.Stat. § 122C-3(9) (2005) defines confidential information as, "any information, whether recorded or not, relating to an individual served by a facility that was received in connection with the performance of any function of the facility." N.C. Gen.Stat. § 122C-54 (2005) provides exceptions to N.C. Gen.Stat. § 122C-52 and requires a medical facility to "disclose confidential information if a court of competent jurisdiction issues an order compelling disclosure."
This Court in In re J.B. held the trial court did not err when it admitted the respondent's mental health records into evidence. 172 N.C. 1, 18, 616 S.E.2d 264, 274 (2005). The trial court ordered the production of the respondent's mental health records prior to the termination hearing at a permanency planning review hearing. Id. "In light of these statutory provisions, we conclude that petitioner was not precluded from admitting respondent's mental health records into evidence." Id. at 18, 616 S.E.2d at 274. Respondent mother did not file a motion in limine or request an in camera review by the trial court and entered only a general objection when the records were tendered into evidence. This assignment of error is dismissed.

*391 C. Guardian ad Litem

Respondent mother argues the trial court erred by failing to appoint a guardian ad litem for her. We disagree.
N.C. Gen.Stat. § 7B-1101 governs the appointment of a guardian ad litem during termination of parental rights proceedings. Respondent does not argue the trial court erred in failing to appoint her a guardian ad litem under N.C. Gen.Stat. § 7B-1101. Respondent mother relies upon N.C. Gen.Stat. § 7B-601 and argues a guardian ad litem was statutorily required to have been appointed to her during the adjudication proceedings.
This Court has stated, "[t]he trial court is under a statutory duty to appoint a GAL when a petition `alleges' a child is dependent and the parent can not offer proper care for their child based on mental illness or other conditions listed in N.C. Gen.Stat. § 7B-602(b)(1)." In re D.D.Y., 171 N.C.App. 347, 353, 621 S.E.2d 15, 18 (2005).
In the judgments terminating respondents' parental rights, the court found that both respondents "willfully left the [children] in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the [children]." N.C. Gen.Stat. § 7B-1111(a)(2) (2005). The court did not find that the juveniles were dependent. N.C. Gen.Stat. § 7B-1111(a)(6) (2005). DSS argues because the motion in the cause to terminate respondent mother's parental rights failed to allege dependency, respondent mother was not entitled to a guardian ad litem.
In In re O.C. and O.B., this Court held "the motion to terminate parental rights neither alleged respondent was incapable of caring for the minor children due to a debilitating condition, nor cited G.S. § 7B-1111(a)(6)." 171 N.C.App. 457, 462, 615 S.E.2d 391, 394, disc. rev. denied, 360 N.C. 64, 623 S.E.2d 587 (2005). The respondent In re O.C. and O.B. argued the termination order should be reversed because the initial adjudication petition alleged the children were both neglected and dependant and a guardian ad litem had not been appointed to her. Id. We rejected this argument and stated:
Only the order on termination of parental rights is before this Court; the order on adjudication is not. Even assuming, arguendo, that the trial court failed to appoint a GAL for respondent during the adjudication proceedings and that she was even entitled to such a GAL, we reject her argument that this bears a legal relationship with the validity of the later order on termination. First, there is no statutory authority for the proposition that the instant order is reversible because of a GAL appointment deficiency that may have occurred years earlier. Our legislature has adopted two separate juvenile GAL appointment provisions concerning the appointment of a GAL for a parent, one found in Article 6 of the Juvenile Code concerning petitions alleging the status of the child, G.S. § 7B-602(b), and a second, equally specific provision in Article 11 concerning the appointment of a GAL for a parent within the context of a motion or petition for termination of parental rights, G.S. § 7B-1101. Neither of these two provisions, nor anything in our Juvenile Code, evinces an intent on the part of the legislature that a failure to appoint a GAL during the earlier adjudication proceedings impacts a later order on termination of parental rights. Secondly, there is no common law authority to support such a proposition.
Id. at 462-63, 615 S.E.2d at 394-96 (emphasis in original).
Consistent with this Court's holding in In re O.C. and O.B. our General Assembly recently amended the law governing appointment for a guardian ad litem for a parent. N.C. Gen.Stat. § 7B-1101.1(c) (2005). The amendments are applicable only to proceedings filed on or after 1 October 2005 and are therefore not applicable here. The amendment reveals the legislature's intent to limit the appointment of a guardian ad litem. The amended statute provides:
On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent if the court *392 determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.
N.C. Gen.Stat. § 7B-1101.1(c).
The issue before this Court is whether respondent mother was, in light of the allegations in the motion in the cause, entitled to appointment of a guardian ad litem for the termination of parental rights proceedings. The motion to terminate respondent mother's parental rights did not allege dependency. The trial court was not required to appoint a guardian ad litem under N.C. Gen.Stat. § 7B-1101. In re O.C. and O. B., 171 N.C.App. at 462, 615 S.E.2d at 394-96. This assignment of error is overruled.

VI. Respondent Father
Respondent father argues the trial court erred when it concluded as a matter of law that grounds exist to terminate his parental rights to each child, and the trial court failed to make proper conclusions of law.
The trial court concluded respondent father "willfully left [his children] in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the [children]." N.C. Gen. Stat. § 7B-1111(a)(2). Respondent father stipulated for DSS to have custody and to make placement and cooperated with DSS by signing and working toward the goals of the case plan. The court found respondent father "completed anger management classes as required by his case plan." Respondent father's social worker testified he had maintained employment. Respondent father had obtained and provided adequate housing for his children at the time of trial.
This Court has stated:
At the hearing on a petitioner's motion for termination of parental rights, the burden of proof shall be upon the petitioner or movant to prove the facts justifying such termination by clear and convincing evidence. N.C. Gen.Stat. § 7B-1111(b) (2001). Thus, in order to prevail in a termination of parental rights proceeding, the petitioner must: (1) allege and prove all facts and circumstances supporting the termination of the parent's rights; and (2) demonstrate that all proven facts and circumstances amount to clear, cogent, and convincing evidence that the termination of such rights is warranted.
In re Baker, 158 N.C.App. at 492-93, 581 S.E.2d at 145 (emphasis supplied).
This Court also stated:
[W]e must also determine that there was clear, cogent, and convincing evidence that (1) respondents "willfully" left the juvenile in foster care for more than twelve months, and (2) that each respondent had failed to make "reasonable progress" in correcting the conditions that led to the juvenile's removal from the home.
Id. at 494, 581 S.E.2d at 146.
Regarding wilfulness, this Court has stated:
A finding of willfulness does not require a showing that the parent was at fault. Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort.
The trial court's order is devoid of any finding that respondent was unwilling to make the effort to make reasonable progress in remedying the situation that led to the adjudication of neglect. The evidence presented at the hearing is directly contrary.
In re C.C., ___ N.C.App. ___, ___, 618 S.E.2d 813, 819 (2005) (internal quotations and citations omitted).
In re Baker, this Court found the respondent father willfully left his child in foster care for more than twelve months without making reasonable progress towards correcting the circumstances that led to the child's removal. 158 N.C.App. at 494, 581 S.E.2d at 146. The respondent father's son had bruises on his body from "improper discipline" administered by the respondent father. Id. at 495, 581 S.E.2d at 147. The respondent father attended anger management classes, but the therapist who taught the classes testified the respondent father had a limited understanding *393 of the concepts involved. Id. at 496, 581 S.E.2d at 148. He did not complete parenting classes. Id. The respondent father failed to complete the requirements of the case plan. Id. The respondent father also refused to sign a DSS family plan for reunification. Id.
This Court stated:
"Extremely limited progress is not reasonable progress." In re Nolen, 117 N.C.App. 693, 700, 453 S.E.2d 220, 224-225 [(1995)]; see also In re Fletcher, 148 N.C.App. 228, 235-236, 558 S.E.2d 498, 502 (2002) (upholding termination of parental rights order where "although the respondent mother made some efforts, the evidence supports the trial court's determination that she did not make sufficient progress in correcting conditions that led to the child's removal"); In re Bishop, 92 N.C.App. 662, 670, 375 S.E.2d 676, 681 [(1989)] (holding trial court's finding was supported by clear, cogent, and convincing evidence where "although respondent has made some progress in the areas of job and parenting skills, such progress has been extremely limited").
Id.
These facts are not present in the case before us. The trial court failed to make findings sufficient to establish either respondent father acted "wilfully" or lacked "reasonable progress."
In In re Nolen, the respondent mother failed to make reasonable progress. 117 N.C.App. at 699, 453 S.E.2d at 224. This Court found the "respondent's alcoholism and abusive living arrangement have continued," and the "respondent has not obtained positive results from her sporadic efforts to improve her situation." Id. at 699-700, 453 S.E.2d at 224-25.
In In re Nesbitt, this Court reversed the trial court's judgment terminating the respondent's parental rights and held the respondent "was cooperative with the social workers, completed all required parenting classes, mental health therapy, and visited with [the child] at every possible chance." 147 N.C.App. 349, 360, 555 S.E.2d 659, 666 (2001). The Court stated:
While we do conclude that there is evidence in the record to support [the finding that respondent failed to make reasonable progress]; we hold that this evidence does not rise to the level of clear, cogent and convincing evidence of grounds for termination of parental rights.
Clear, cogent and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt.
Id. at 355, 555 S.E.2d at 664 (internal quotations and citations omitted).
Here, respondent father voluntarily agreed to and completed the requirements of his case plan. When asked at trial whether DSS had informed him of any obligations he needed to complete in order to have his children reunited with him, he replied, "I've done everything they've told me to do."
The trial court's findings state respondent father completed anger management classes. The findings also state respondents reside in a mobile home owned by the paternal grandfather, and they received help in paying their utilities. The findings do not explain how that fails to meet the requirement that respondents "obtain a residence suitable for their children without eviction or loss of utilities." The findings also state respondent father visited the children weekly.
With respect to child support, the trial court found respondent father did not comply with the requirement that he contact DSS to arrange for payment of support, but in finding respondent father failed to pay child support, the trial court made no findings respondent father was able to provide support more than he did. The trial court made no finding that respondent father's failure to pay was willful. Respondent father's social worker testified that given the economic circumstances in Rutherford County, respondent father "was laid off for brief periods of time," but the evidence showed he maintained employment when available in Rutherford County. His social worker also testified:
[t]he parents have purchased gifts for the children at birthdays and Christmas. *394 Since the first of this year, we have changed our visitation slightly where the family has a meal together. Typically at a place like McDonald's or Burger King or Bojangles, those sorts of places. So about once a week they are purchasing a meal for their children.
The trial court's judgments contain no further findings of fact regarding specific acts of domestic violence and only state generally that "[a]cts of domestic violence by [the father] against [the mother] have infiltrated the ... household for years and continue to do so." While the guardian ad litem cites to various other evidence of domestic violence, the court made no findings of fact regarding that evidence and it cannot be considered. The only domestic violence incident found by the court is the spitting incident. Respondent father testified regarding this incident:
Q [Y]ou've never had a drug problem?
A No.
....
Q You might have gotten mad or there's been some violence because of the 
A Yes. Of the drugs.
Q Is there anything else about raising children that's a problem for you?
A No.
Q Is there anything about raising children that you know is a problem for your mother?
A No.
Q You have had no criminal problems with any kind of violence other than these things with your wife; is that correct?
A In October  when that  when I got charged.
Q Other than with your wife. You haven't gone around swatting people and getting in fights and getting arrested?
A No.
Q No criminal assaultive behavior?
A No.
Q You want your kids back bad?
A Yes, I do.
Respondent father "obtained positive results" from his efforts to remain employed, provide housing for his children, and complete anger management classes.
Our standard of review is whether clear, cogent, and convincing evidence supports a finding and conclusion to terminate respondent father's parental rights. In re Nesbitt, 147 N.C.App. at 355, 555 S.E.2d at 664. The trial court failed to make findings of fact to support a conclusion that respondent father "willfully left the [children] in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the [children]." N.C. Gen.Stat. § 7B-1111(a)(2). A parent's failure to fully satisfy all elements of the case plan goals is not the equivalent of a lack of "reasonable progress." Id. The trial court's findings suggest substantial cooperation and progress by respondent father with DSS to attend classes, find work, and to provide a safe home for his children, in the face of harsh economic conditions, while coping with respondent mother's threats of suicide and her being uncooperative both with him and DSS. The trial court failed to make any other findings to establish wilfulness or a lack of "reasonable progress" by respondent father to sustain the its conclusion that statutory grounds for termination had been proven to the required standard. Id. Those portions of the judgments terminating respondent father's rights are reversed. In light of our decision, it is unnecessary to consider his remaining assignments of error.

VII. Conclusion
Presuming notice was deficient, respondent mother was present with counsel and participated without objection to notice in the termination hearings. Respondent mother waived any purported lack of personal jurisdiction by the trial court to hear the motion in the cause to terminate her parental rights. The trial court did not err in receiving respondent mother's mental health medical records into evidence. Under these facts, the trial court did not err when it failed to appoint a guardian ad litem for respondent *395 mother at the termination hearings. The trial court's judgments terminating respondent mother's parental rights are affirmed.
The trial court failed to make adequate findings of fact to support its conclusion that respondent father "willfully left the [children] in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the [children]." N.C. Gen.Stat. § 7B-1111(a)(2). The trial court's judgments terminating respondent father's parental rights are reversed.
Affirmed in Part, Reversed in Part, and Remanded.
Judges HUDSON and GEER concur.