IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-21

 No. 69A20

 Filed 19 March 2021

 IN THE MATTER OF: A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., Jr.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on

 26 November 2019 by Judge Jeanie R. Houston in District Court, Wilkes County.

 This matter was calendared for argument in the Supreme Court on 11 February 2021

 but determined on the record and briefs without oral argument pursuant to Rule 30(f)

 of the North Carolina Rules of Appellate Procedure.

 Erika Leigh Hamby for petitioner-appellee Wilkes County Department of Social
 Services.

 Poyner Spruill LLP, by John Michael Durnovich and Christopher S. Dwight,
 for appellee Guardian ad Litem.

 Sydney Batch for respondent-appellant mother.

 BARRINGER, Justice.

¶1 Respondent-mother appeals from the trial court’s 26 November 2019 orders

 terminating her parental rights in her minor children A.M.L. (Allie),1 G.J.L.

 (Gregory), T.R.B., Jr. (Teddy), J.E.B. (Johnson), and B.J.B. (Braxton).2 Upon careful

 1 Pseudonyms are used throughout this opinion to protect the identities of the
 juveniles.
 2 While the parental rights of the children’s fathers were also terminated, neither

 father appealed the trial court’s termination orders nor are they parties to this appeal. The
 trial court terminated the parental rights of Teddy, Johnson, and Braxton’s father in the
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 consideration, we affirm the trial court’s orders terminating respondent-mother’s

 parental rights.

 I. Factual and Procedural Background

¶2 The Wilkes County Department of Social Services (DSS) first became involved

 with respondent-mother almost a decade and a half before the ultimate termination

 of her parental rights. In July of 2005, DSS conducted a family assessment based on

 allegations of neglect. At that time, respondent-mother’s eldest child, Allie, was

 barely one year old, while her little brother, Gregory, was only a few months old.

 Since that first assessment, respondent-mother has incurred more than a dozen

 subsequent DSS assessments, subjecting Allie and Gregory, as well as their younger

 brothers Teddy, Johnson, and Braxton, to multiple placements in foster care, three

 placements in case management, and numerous case decisions for services needed or

 services recommended.

¶3 On 25 January 2018, DSS received a report alleging drug use in respondent-

 mother’s home while her five children—thirteen-year-old Allie, twelve-year-old

 Gregory, ten-year-old Teddy, three-year-old Johnson, and three-year-old Braxton—

 were locked in a room. DSS’s investigation confirmed the allegations. Allie and

 Gregory reported that their parents invited strange men into the home, permitted

 same 26 November 2019 orders that terminated respondent-mother’s parental rights. As for
 Allie and Gregory’s father, the trial court terminated his parental rights by a different order
 entered in a separate termination hearing.
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 drug use in the home, used drugs themselves, and locked the children in a room for

 hours at a time, leaving Allie to care for her younger siblings. Further, respondent-

 mother encouraged Allie and Gregory to use marijuana, and Gregory, influenced by

 the encouragement, used marijuana.

¶4 In response, DSS attempted to place the children in safety resource

 placements. However, both placements failed—the first caregiver was unable to care

 for the children and the second disregarded the safety plan and allowed the parents

 unsupervised time alone with the children. As a result, DSS obtained nonsecure

 custody of the children and filed juvenile petitions alleging that the children were

 neglected juveniles. After a hearing on 19 March 2018, the trial court entered a

 disposition order on 28 June 2018 adjudicating the children to be neglected juveniles,

 ordering custody of the children to remain with DSS, and granting supervised

 visitation to respondent-mother on the condition that she pass random drug screens.

¶5 DSS prepared a case plan that required respondent-mother to take parenting

 classes, complete a substance abuse assessment and follow any treatment

 recommendations, complete a mental health assessment and follow any treatment

 recommendations, participate in a recovery group, obtain and maintain appropriate

 housing and employment, complete random drug screens, attend a group designed to

 assist with special needs children, develop knowledge of Johnson’s diagnosis and

 needs, attend all visitations, sign a voluntary support agreement, remain in contact
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 and attend meetings with DSS, refrain from criminal activity, and provide written

 statements as to why the children were placed in DSS custody.

¶6 In the permanency planning and review orders entered after a 25 June 2018

 hearing, the trial court found that respondent-mother had made no progress on her

 case plan. After signing the case plan, respondent-mother had failed two drug screens

 (testing positive for methamphetamine and OxyContin), been incarcerated twice in

 the prior three weeks, failed to comply with any of DSS’s requests, maintained

 minimal contact with the social worker, and only visited once with all five children.

 In addition, since the children entered custody on 31 January 2018, respondent-

 mother had incurred twenty-six criminal charges. As a result, the trial court left

 custody of the children with DSS, set the primary plan for the children as adoption

 with a secondary plan of custody with an approved caregiver, and relieved DSS of

 further efforts towards reunification.

¶7 In an order filed following the next permanency-planning hearing on

 4 February 2019, the trial court found that respondent-mother had made “very little

 progress” on her case plan and still “need[ed] significant substance abuse and mental

 health treatment.” Due to its assessment, the trial court made no changes to custody,

 visitation, or the children’s permanent plans.

¶8 On 4 March 2019, DSS filed petitions to terminate respondent-mother’s

 parental rights due to her neglect and willful failure to make reasonable progress
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 under N.C.G.S. § 7B-1111(a)(1) and (2). In addition, DSS alleged that grounds existed

 to terminate respondent-mother’s parental rights in Teddy, Johnson, and Braxton for

 dependency under N.C.G.S. § 7B-1111(a)(6). The trial court held the termination

 hearing on 13 June and 1 July 2019.

¶9 On 26 November 2019, the trial court entered orders terminating respondent-

 mother’s parental rights. After making extensive findings of fact, the trial court

 concluded that grounds existed to terminate respondent-mother’s parental rights in

 each child pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6) and that it was in each

 child’s best interests to terminate respondent-mother’s parental rights. Respondent-

 mother appeals from these termination orders.

 II. Standard of Review

¶ 10 The Juvenile Code provides a two-step process for termination of parental

 rights consisting of an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-

 1109 to -1110 (2019). During the adjudicatory stage, the petitioner bears the burden

 of proving by clear, cogent, and convincing evidence that one or more grounds for

 termination exists. N.C.G.S. § 7B-1109(e)–(f). If the petitioner meets this burden, the

 matter proceeds to the dispositional stage where the trial court must determine

 whether termination of parental rights is in the children’s best interests. N.C.G.S.

 § 7B-1110(a).
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

¶ 11 This Court reviews the trial court’s adjudication of grounds to terminate

 parental rights under N.C.G.S. § 7B-1111(a) “to determine whether the findings are

 supported by clear, cogent and convincing evidence and the findings support the

 conclusions of law.” In re N.G., 374 N.C. 891, 895 (2020) (quoting In re Montgomery,

 311 N.C. 101, 111 (1984)). If a finding of fact is supported by clear, cogent, and

 convincing evidence, it “is deemed conclusive even if the record contains evidence that

 would support a contrary finding.” In re B.O.A., 372 N.C. 372, 379 (2019). Meanwhile,

 findings of fact “not challenged by respondent are deemed supported by competent

 evidence and are binding on appeal.” In re T.N.H., 372 N.C. 403, 407 (2019). Finally,

 this Court reviews de novo “whether a trial court’s findings of fact support its

 conclusions of law.” In re J.S., 374 N.C. 811, 814 (2020).

 III. Analysis

¶ 12 Respondent-mother challenges all three grounds for termination adjudicated

 by the trial court. Since “an adjudication of any single ground for termination under

 N.C.G.S. § 7B-1111(a) will suffice to support a trial court’s order terminating parental

 rights,” this Court need only uphold one of the statutory grounds adjudicated by the

 trial court. In re L.M.M., 375 N.C. 346, 349 (2020).

¶ 13 The second ground adjudicated for the termination of respondent-mother’s

 parental rights was for willfully leaving her children in foster care or placement

 outside the home without making reasonable progress, per N.C.G.S. § 7B-1111(a)(2).
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 To terminate parental rights under this provision, the trial court must find that

 respondent-mother (1) “willfully left the juvenile[s] in foster care or placement outside

 the home for more than 12 months,” and (2) respondent-mother did not show

 “reasonable progress under the circumstances . . . in correcting those conditions which

 led to the removal of the juvenile[s].” N.C.G.S. § 7B-1111(a)(2) (2019).

¶ 14 In adjudicating grounds for the termination of respondent-mother’s parental

 rights, the trial court made the following findings of fact:3

 16. The minor child[ren have] remained in the care and
 custody of the Wilkes County Department of Social
 Services continuously since January 31, 2018 and
 therefore, [have] been in the care and custody of [DSS]
 for approximately sixteen (16) months at the time of
 this hearing.

 ....

 18. Investigator Norwood spoke to [Allie] who indicated
 that there was active drug use in the home, some drug
 use in front of the children, Respondent Mother
 encouraged the older children to use marijuana, and
 [Allie] and her siblings were locked in a room while she
 was made to provide care for them.

 ....

 20. At the time of the report the family was living in a
 house on Boone Trail. [Allie] got an award from school
 and was excited to show her mother and step-father.
 She went into the bathroom and saw Mother with a
 needle in her arm and step-father with a cloth around

 3 The quoted language comes from the order terminating respondent-mother’s
 parental rights in Allie. While the trial court entered separate orders for each child, the
 orders are nearly identical as to the findings and conclusions related to respondent-mother.
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 his arm.

21. [Allie] confirmed that Respondent Mother and her
 step-father were aware that the children had been
 offered marijuana by a cousin and they allowed at least
 one of the children to use marijuana.

....

26. After the minor child[ren] w[ere] placed into the care
 and custody of [DSS], a Family Services Case Plan was
 developed on February 27, 2018 for Respondent Mother
 to address the conditions that led to the minor
 child[ren]’s removal from the home specifically:
 substance abuse, parenting skills, and mental health.

27. Respondent Mother signed her Family Services Case
 Plans with [DSS] on May 1, 2018, after the minor
 child[ren] had been in care for over four months.

28. Prior to May 1, 2018 Respondent Mother was not
 cooperating with the agency, she was not maintaining
 contact with the Social Worker, and was not utilizing
 visitation with the minor child[ren].

....

33. Subsequent to the minor child[ren] coming into the
 care of [DSS], Respondent Mother obtained 26 new
 criminal charges in four surrounding counties. These
 charges included breaking and entering, simple
 possession of controlled substances, and larceny. She
 spent some time in jail after initially being charged, but
 she did not have any lengthy period of incarceration.

....

35. [DSS] sent referrals for substance abuse and mental
 health assessments to Daymark Recovery in May 2018.
 Respondent Mother did not complete assessments with
 Daymark until approximately March 2019 while in
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 Case Management with her new child. This
 assessment appeared to be only a substance abuse
 assessment, and did not appear to include a mental
 health assessment.

36. Respondent Mother tested positive for buprenorphine
 at the time of her assessment with Daymark in March
 2019. When questioned about being positive for
 buprenorphine, she told the assessors that she was
 participating in treatment with Rowan Psychiatric.
 Due to her reported compliance with Rowan
 Psychiatric, she was not given any recommendations
 by Daymark other than to continue in treatment.

37. [DSS] was unaware of the mother’s participation with
 Rowan Psychiatric until receiving the assessment from
 Daymark Recovery. [DSS] cannot verify that the
 mother completed an assessment at Rowan
 Psychiatric, or that she was receiving the
 comprehensive treatment including medication and
 counseling.

38. The Social Worker requested Respondent Mother’s
 records from Rowan Psychiatric. The Social Worker
 received records for Respondent Mother, but those
 records primarily consisted of drug screen results. Most
 screens were negative, but the records did indicate that
 the mother tested positive for oxymorphone in
 November 2018. Respondent Mother began attending
 Rowan Psychiatric in September 2018.

....

46. Respondent Mother was requested to attend Recovery
 Seekers or a similar group for individuals in recovery.
 She has not participated in such a group.

47. Respondent Mother was to participate in random drug
 screens to demonstrate compliance with substance
 abuse treatment, and appropriate use of medication.
 Mother was called for approximately twenty-three
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 random drug screens.

 a. She failed to show for screens eight times . . . .

 b. Respondent Mother appeared and passed drug
 screens nine times . . . .

 c. Respondent Mother appeared and failed drug
 screens five times on the following dates:
 February 6, 2018 failed for methamphetamine,
 July 16, 2018 failed for amphetamine, October 1,
 2018 failed for oxymorphone, November 6, 2018
 failed for oxymorphone, and May 16, 2019 failed
 for amphetamine and methamphetamine.

48. Respondent Mother asserted that she believed she
 failed the May 16, 2019 drug screen due to taking
 Zyrtec and Sudafed for allergies and congestion. The
 [c]ourt did not find this assertion compelling.

....

55. Respondent Mother indicates that she attends Rowan
 Psychiatric for Subutex treatment, and states that she
 has appointments once a month to receive her
 medications, attend counseling, and see her doctor. She
 indicates that she is drug tested when she visits the
 doctor, and that she is receiving treatment for bi-polar
 as well.

56. Respondent Mother acknowledged that she did not
 inform the Social Worker about her participating in
 treatment at Rowan Psychiatric or the prescription
 medication(s) she received as part of that treatment.

....

60. Respondent Mother claims to be drug free for 6 to 7
 months, but failed drug screens in November 2018 and
 May 2019.

61. Respondent Mother tends to overstate her periods of
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 sobriety. . . .

....

64. Respondent Mother attributed [her] late start working
 on the Case Plan to not having a hard copy of the Case
 Plan to reference. The [c]ourt did not find this
 persuasive as Respondent Mother had participated in
 multiple cases of Case Management with [DSS] in the
 past and had always been able to complete those items
 timely.

65. Respondent Mother and her husband in fact completed
 their Voluntary Services Plan for their newest child
 within 60 days.

66. The minor child[ren] . . . have been in the care of [DSS]
 on two other occasions due to similar allegations
 regarding substance abuse. On both occasions
 Respondent Mother complied with her Family Services
 Case Plan and the children were returned to her care
 only to reenter care again due to the same or similar
 concerns of substance abuse.

67. Respondent Mother admitted that even without a hard
 copy Case Plan to reference, due to her past
 involvement with [DSS] she was aware that she would
 need to take parenting classes, and address her
 substance abuse concerns.

....

69. Though Respondent Mother purports to have been
 working a substance abuse treatment plan through
 Rowan Psychiatric since September 2018, she has
 failed at least three drug screens since September
 2018.

70. Respondent Mother reports that she is being treated
 for bipolar though her records received from Rowan
 Psychiatric do not reveal a mental health assessment
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 or any mental health treatment.

 ....

 72. Respondent Mother has not adequately addressed her
 substance abuse or mental health issues . . . .

¶ 15 After making these findings, the trial court concluded

 [t]hat upon clear, cogent, and convincing evidence that the
 minor child[ren have] been willfully left in foster care for
 more than twelve (12) months without Respondent Mother
 making reasonable progress to correct the conditions that
 led to [their] removal, specifically substance abuse,
 parenting skills, and mental health. Considering that
 Respondent Mother has made very little progress on her
 Family Services Case Plan, and there is no evidence she
 has adequately addressed these issues outside of a Case
 Plan, and she ultimately did not maintain a stable bond
 between herself and the minor child[ren]. Therefore, the
 Petitioner has shown that grounds exist pursuant to
 N.C.G.S. § 7B-1111(a)(2) to terminate Respondent
 Mother’s parental rights.

¶ 16 On appeal, respondent-mother concedes that she left her children in foster care

 for sixteen months, exceeding the twelve months required to terminate parental

 rights under N.C.G.S. § 7B-1111(a)(2). However, respondent-mother contests several

 of the trial court’s findings of facts, as well as its conclusion to terminate her parental

 rights, arguing that she substantially complied with the case plan.

 A. Challenge to the Trial Court’s Finding That There Was Time Available
 for Respondent-Mother to Complete the Case Plan

¶ 17 Respondent-mother begins by challenging the trial court’s findings concerning

 her lack of progress before signing the case plan on 1 May 2018. According to
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 respondent-mother, she was not provided a copy of her case plan when DSS first

 created it on 27 February 2018. However, the trial court considered this assertion in

 its findings of fact, noting that respondent-mother had successfully completed two

 previous case plans and thus “was aware that she would need to take parenting

 classes[ ] and address her substance abuse concerns.” Moreover, respondent-mother

 testified that she knew from the beginning that, regardless of the case plan, she

 needed to address her substance abuse issues. Yet despite this knowledge,

 respondent-mother did not point to a single action taken prior to 1 May 2018 that

 addressed either her parenting or substance abuse issues.

¶ 18 Additionally, the trial court noted that respondent-mother’s alleged “late start

 working on the Case Plan” was not persuasive because she had previously completed

 two other case plans in a timely manner. The record supports this determination.

 DSS created the case plan on 27 February 2018. Even if respondent-mother did not

 receive a copy of the case plan until 1 May 2018, she was without a physical copy for

 at most sixty-two days. In comparison, the termination hearing occurred a full year

 after 1 May 2018, on 13 June and 1 July 2019, giving respondent-mother ample time

 to comply with the case plan after she signed it. Accordingly, the trial court did not

 err by finding that respondent-mother had sufficient time—namely an entire year—

 to make reasonable progress on the case plan, regardless of the two months she may

 have been without a physical copy.
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

¶ 19 In a similar vein, respondent-mother challenges finding of fact 28—that she

 was not cooperating with DSS, not maintaining contact with the social worker, and

 not visiting her children prior to 1 May 2018. This finding of fact has no impact on

 our analysis. Accordingly, we decline to address respondent-mother’s assignment of

 error regarding finding of fact 28. As previously noted, even ignoring the two months

 that elapsed between the case plan’s creation and the day it was signed, respondent-

 mother still had more than a full year to make reasonable progress on the case plan.

 Regardless of her behavior during the two months when she allegedly was unable to

 contact the social worker or visit the children, her actions during the next year were

 sufficient to support the trial court’s finding that she failed to make reasonable

 progress on her case plan.

 B. Challenge to the Trial Court’s Finding That Respondent-Mother Did Not
 Make Progress on the Case Plan

¶ 20 Respondent-mother’s primary argument is that her actions in the year before

 the termination hearing contradict the trial court’s findings that she made very little

 progress on her case plan. However, the trial court acknowledged these actions in its

 findings of fact; they simply were not enough to comprise reasonable progress. After

 careful review, we hold that the trial court’s conclusion that grounds for termination

 of respondent-mother’s parental rights existed under N.C.G.S. § 7B-1111(a)(2) was

 supported by the findings of fact, and so we affirm.
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

¶ 21 As this Court has recognized, “in order for a respondent’s noncompliance with

 her case plan to support the termination of her parental rights, there must be a nexus

 between the components of the court-approved case plan with which the respondent

 failed to comply and the conditions which led to the child’s removal from the parental

 home.” In re J.S., 374 N.C. at 815–16 (cleaned up) (quoting In re B.O.A., 372 N.C. at

 385). In this case, the nexus is respondent-mother’s substance abuse, which directly

 led to the children’s removal on 31 January 2018 and had previously led to her losing

 custody of the children on multiple other occasions. Accordingly, the case plan created

 by DSS was tailored to help respondent-mother overcome her substance abuse issues,

 as well as address her parenting skills and mental health struggles. While

 respondent-mother emphasizes the progress she made on the parenting skills portion

 of the case plan, the trial court’s findings focused on the true gravamen of her case—

 her substance abuse—as well as her mental health struggles. Since “we review only

 those findings needed to sustain the trial court’s adjudication,” we address only her

 substance abuse and mental health issues. See In re J.S., 374 N.C. at 814.

¶ 22 As previously noted, respondent-mother’s substance abuse has resulted in

 DSS’s recurring involvement with the family and the children’s placement in DSS

 custody on multiple prior occasions. Respondent-mother testified that she had

 attempted recovery numerous times and agreed with Allie’s testimony that she has

 been in a cycle of recovery and relapse. In its findings, the trial court noted that
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 respondent-mother had been “in recovery on at least three prior occasions” and had

 “admit[ed] and acknowledged a history of substance abuse in her written statements

 as to why the children were brought into care, as well as during conversation with

 the Social Worker.”

¶ 23 Although respondent-mother recognized that her substance abuse resulted in

 losing custody of her children, she failed to make adequate progress to address it

 during the sixteen months following the children’s removal. Respondent-mother’s

 case plan required her to complete a substance abuse assessment, submit to drug

 screens, and participate in a group recovery program. In May 2018, DSS referred

 respondent-mother to Daymark Recovery for a substance abuse assessment as part

 of the case plan concerning Allie, Gregory, Teddy, Johnson, and Braxton, but

 respondent-mother never went. Instead, it was not until she was completing her case

 plan regarding a different child, her infant born on 18 January 2019, that

 respondent-mother went to Daymark Recovery for an assessment in March 2019. In

 addition, although respondent-mother was required to attend a recovery group, she

 never participated in one.

¶ 24 Even more concerning, respondent-mother repeatedly failed drug screens

 throughout the pendency of her case, including one less than a month before the

 13 June 2019 termination hearing. Of the more than twenty random drug screens

 DSS requested, respondent-mother failed five screens, did not show up for an
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 additional eight screens, and passed only nine. Moreover, the trial court’s findings

 reveal that out of the five drugs screens respondent-mother failed, three of them

 occurred after respondent-mother purported to have begun participating in substance

 abuse treatment through Rowan Psychiatric in September 2018.4 The most recent

 failed screen—at which respondent-mother tested positive for amphetamine and

 methamphetamine—occurred on 16 May 2019, less than one month before the

 termination hearing. While respondent-mother asserted that this failed screen was

 due to taking Zyrtec and Sudafed for allergies and congestion, the trial court gave

 little weight to the explanation, specifically stating that it “did not find this assertion

 compelling.”

¶ 25 Respondent-mother argues that she made such substantial progress in

 addressing her substance abuse that the trial court erred by finding sufficient

 grounds to terminate her parental rights. In support of this contention, respondent-

 mother relies on her own testimony that she completed a substance abuse assessment

 at Rowan Psychiatric and was participating in treatment. The trial court considered

 this evidence in making its decision. However, the trial court found respondent-

 mother’s assertions were undermined by her failure to report any of this treatment

 4The findings further show that two of respondent-mother’s missed drug screens
 occurred after she purported to have been seeking treatment at Rowan Psychiatric.
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 to DSS—and, more importantly, the fact that DSS’s record request to Rowan

 Psychiatric revealed primarily drug screen results.

¶ 26 According to the social worker’s testimony, Rowan Psychiatric reported that

 respondent-mother was not participating in a full substance abuse program and had

 not completed a substance abuse assessment. Instead, respondent-mother was only

 participating in a methadone treatment program. Based on the social worker’s

 testimony and the records Rowan Psychiatric provided DSS, which consisted

 primarily of drug screen results, the trial court found that DSS could not “verify that

 [respondent-mother] completed an assessment at Rowan Psychiatric, or that she was

 receiving comprehensive treatment.”

¶ 27 The second focus of the trial court’s findings was respondent-mother’s mental

 health issues. On appeal, respondent-mother does not challenge any of the trial

 court’s findings concerning her failure to make reasonable progress toward improving

 her mental health. Therefore, these findings “are deemed supported by competent

 evidence and are binding on appeal.” In re T.N.H., 372 N.C. at 407.

¶ 28 While N.C.G.S. § 7B-1111(a)(2) does not require parents to “fully satisfy all

 elements of the case plan goals,” they must at least make more than “ ‘extremely

 limited progress’ in correcting the conditions leading to removal.” In re B.O.A., 372

 N.C. at 385 (quoting In re J.S.L., 177 N.C. App. 151, 160, 163 (2006)). The findings

 above show that despite respondent-mother recognizing that her substance abuse
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

 issues were the primary reason she kept losing custody of her children, she still failed

 to show reasonable progress under her case plan, particularly in correcting the

 conditions which led to the removal of her children. Respondent-mother frequently

 skipped drug screens; failed a number of the drug screens, including one less than a

 month before the termination hearing; did not participate in any support group; and,

 at best, participated in only limited treatment. These facts, combined with

 respondent-mother’s noncompletion of any of the mental health aspects of the case

 plan, support the trial court’s conclusion that she failed to make reasonable progress

 to remedy the conditions that led to the children’s removal, regardless of respondent-

 mother’s steps toward improving her parenting skills.

 C. Challenge to the Trial Court’s Finding of Willfulness

¶ 29 Respondent-mother also challenges the trial court’s conclusion that her failure

 to make reasonable progress was willful. This Court has already established that

 “[t]he determination that respondent acted ‘willfully’ is a finding of fact rather than

 a conclusion of law.” In re J.S., 374 N.C. at 818. In addition, a “finding that a parent

 acted ‘willfully’ for [the] purposes of N.C.G.S. § 7B-1111(a)(2) does not require a

 showing of fault by the parent.” Id. at 815 (cleaned up) (quoting In re Oghenekevebe,

 123 N.C. App. 434, 439 (1996)). It simply requires respondent-mother’s “prolonged

 inability to improve her situation, despite some efforts in that direction.” Id. (quoting

 In re J.W., 173 N.C. App. 450, 465 (2005)).
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

¶ 30 The evidence reviewed above already establishes respondent-mother’s

 prolonged failure to improve her situation. Further, respondent-mother’s willfulness

 was confirmed by her ability to complete the case plan for her infant child. While

 respondent-mother argues that DSS’s determination not to seek custody of that child

 contradicts the trial court’s decision to terminate her parental rights in the rest of the

 children, it actually highlights her willfulness. After all, respondent-mother

 completed the case plan concerning her infant child, leading DSS to not seek custody

 of the newborn. In contrast, as discussed above, respondent-mother did not make

 reasonable progress on the case plan concerning the rest of her children. Moreover,

 the trial court noted that on two previous occasions respondent-mother had timely

 completed her assigned case plans. Given this evidence, we uphold the portion of the

 trial court’s orders finding that respondent-mother’s failure to make progress on the

 case plan in this case demonstrated willfulness.

 IV. Conclusion

¶ 31 The trial court did not err by terminating respondent-mother’s parental rights.

 Contrary to respondent-mother’s arguments, the trial court’s findings involving the

 ample time respondent-mother had to make progress on her case plan, her failure to

 adequately address her substance abuse and mental health issues, and the

 willfulness of her actions were all supported by clear, cogent, and convincing

 evidence. When considered in conjunction with respondent-mother’s admission that
 IN RE A.M.L., G.J.L., B.J.B., J.E.B., T.R.B., JR.

 2021-NCSC-21

 Opinion of the Court

the children were in DSS custody for more than twelve months, the findings support

the trial court’s conclusion that grounds for termination existed under N.C.G.S. § 7B-

1111(a)(2). Since respondent-mother has not challenged the trial court’s

determination that termination was in the best interests of the five children, the trial

court properly terminated her parental rights in Allie, Gregory, Teddy, Johnson, and

Braxton. As a result, we affirm the orders of the trial court.

 AFFIRMED.